E-FILED
Monday, 23 March, 2026  03:09:16 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| REUBEN D. WALKER, individually and on behalf of a class of all others similarly situated, <br>     Plaintiffs, <br><br> v. <br><br> BRANDEN MARTIN, Treasurer of Peoria County, Illinois, in his official capacity and as representative of a class of all County Treasurers of the State of Illinois in their official capacities; MICHAEL W. FRERICHS, Treasurer of the State of Illinois in his official capacity; and TIM BROPHY, Treasurer of Will County, Illinois, and MARIA PAPPAS, Treasurer of Cook County, Illinois, in their official capacities, <br>     Defendants. | Case No. 1:25-cv-01378-JEH-RLH |

**Order**

Now before the Court are Defendant Branden Martin, Treasurer of Peoria County's Motion to Dismiss (D. 38), Defendant Cook County Treasurer's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (D. 40), Defendant Illinois Treasurer Michael Frerichs's Motion to Dismiss (D. 41), Defendant Will County Treasurer Tim Brophy's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), (6), & (7) (D. 43), Defendant Macoupin County Treasurer Amber McGartland's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), (6), & (7) (D. 46), Plaintiff Reuben Walker's Consolidated Response to Motions to

1

Dismiss Filed by County Defendants Martin, Brophy and Pappas (D. 47), the Plaintiff's Response to the Motion to Dismiss of Defendant Illinois State Treasurer Frerichs (D. 48), and the parties' Replies (D. 51 & 54) and Sur Replies (D. 57 & 58).[1] This matter is fully briefed, and for the reasons set forth *infra*, all of the Defendants' Motions to Dismiss are GRANTED.

**I**

On September 11, 2025, Plaintiff Reuben D. Walker (Walker) filed a putative Class Action Complaint (D. 1) against Defendants Branden Martin (Martin), Treasurer of Peoria County, Illinois, in his official capacity and as representative of all County Treasurers in the State of Illinois in their official capacities; Michael W. Frerichs (Frerichs), Treasurer of the State of Illinois; Tim Brophy (Brophy), Treasurer of Will County, Illinois; and Maria Pappas (Pappas), Treasurer of Cook County, Illinois. The Plaintiff brings his claims pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the U.S. Constitution. The Plaintiff requests this Court declare the State of Illinois' possession of the putative class's property constitutes an on-going federally unconstitutional taking without just compensation in violation of the Takings Clause of the Fifth and Fourteenth Amendments. He asks for "prospective relief" in the form of an order directing Defendant Frerichs to stop the on-going retention of their property and to return their property along with all interest earned upon said property pursuant to the Declaratory Judgment and Injunction Acts, 28 U.S.C. § 2201 and 28 U.S.C. § 1342[2], respectively. He asks for a declaration that the Illinois State Lawsuit Immunity

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

[2] The Plaintiff's reliance on the "Injunction Act" and "28 USC 1342 et al" appears mistaken here. The Tax Injunction Act, 28 U.S.C. § 1341, among other things, "divests the district courts of subject matter jurisdiction in 'cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes.'" *Scott Air Force Base Props., LLC v. Cnty. of St. Clair, Ill.*, 548 F.3d 516, 520 (7th Cir. 2008) (quoting *Hibbs v. Winn*, 542 U.S. 88, 107 (2004)). 28 U.S.C. § 1342 provides, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

Act (Immunity Act) violates the Fifth and Fourteenth Amendments such that the Defendants or any other State of Illinois officials are prohibited from using, or claiming to be permitted to use, the Immunity Act to retain private property without just compensation to its owners. The Plaintiff also asks that County Treasurer Defendants Martin, Pappas, Brophy, and McGartland (County Treasurer Defendants) be ordered to return all of the fees they have retained and for damages pursuant to Section 1983.

Specifically, the Plaintiff alleges[3] his claims began in 2012 when he, as lead class representative, challenged in Illinois state court the constitutionality of Illinois legislation which imposed a $50 "add-on" court filing fee on all mortgage foreclosure filings (fee statute) within the State of Illinois. That state court action was filed against a class consisting of all 102 circuit court clerks in the State of Illinois as the state officers charged with collecting the fees. In 2020, an Illinois circuit court in Will County found the legislation to be facially unconstitutional, and, in 2021, the Illinois Supreme Court affirmed that finding and ruled the legislation to be facially unconstitutional in derogation of the Free Access Clause of the Illinois Constitution. In January 2025, the Illinois Supreme Court concluded that once the Illinois "courts declared the fee statute unconstitutional and enjoined its enforcement, plaintiffs' claims for a monetary award to redress a past wrong was the type of claim that is the province of the Court of Claims, not the circuit court." *Walker v. Chasteen*, 268 N.E.3d 133, 137 (Ill. 2025).[4]

The Plaintiff alleges the State of Illinois refused to return the $102 million charged pursuant to the unconstitutional fee statute and continues to retain the money. He alleges the State persuaded the Illinois Supreme Court that the Illinois

---

[3] At the motion to dismiss stage, a court "accept[s] the well-pleaded facts in the complaint as true and draw[s] reasonable inferences in the plaintiff's favor." *Bronson v. Ann & Robert H. Lurie Child.'s Hosp. of Chi.*, 69 F.4th 437, 448 (7th Cir. 2023).

[4] The Plaintiff phrases the Illinois Supreme Court's holding in this case differently.

courts were powerless to complete the required constitutional remedy of return of the unlawful fees, and the Illinois Supreme Court held that the Immunity Act left the Plaintiffs with no means to recover the fees unlawfully taken in the courts and their only recourse to obtain the refund was to petition the Illinois Court of Claims. He says the Illinois Court of Claims is not part of the Illinois judicial branch, and, thus, it has unfettered authority to refuse to refund the fees and thereby permit the State of Illinois to retain the full benefit of its unconstitutional collection.

The Plaintiff further alleges 2% of the collected filing fees were retained by the circuit court clerks of each of the 102 counties within the State of Illinois as compensation for the expenses related to the collection of those fees and to reimburse the individual counties that were charged under Illinois law with providing the compensation required to maintain the office of the circuit court clerks within each county. Pl.'s Compl. (D. 1 at ECF p. 4) (citing 735 ILL. COMP. STAT. 5/15-1504.1, 20 ILL. COMP. STAT. 3805/7.30, and 20 ILL. COMP. STAT. 3805/7.31). He states those funds were not to be transferred to the possession of the State of Illinois and are to be retained in the possession of and in the control of the country treasurer of each county. To date, none of these funds have been returned to the putative class.

In its January 2025 opinion, the Illinois Supreme Court explained that the refunds (a return of the unconstitutional "add-on" filing fees) Walker and the class there sought were "the type of relief the Court of Claims may award[]". *Walker*, 268 N.E.3d at 144. The class asserted that "if their refund claim turn[ed] out to be time-barred in the Court of Claims, the State's retention of the unconstitutionally taken funds would violate the takings clause of the United States Constitution and the Illinois Constitution." *Id*. The Illinois Supreme Court responded that "adopting plaintiffs' position that a procedural bar to recovery in the Court of Claims is tantamount to a takings clause violation would negate the procedural

4

requirements that the General Assembly enacted to prescribe the court's authority." *Id.* The *Walker* court continued, it "need not decide and [does] not consider whether plaintiffs are procedurally barred from pursuing their refund claim in the Court of Claims." *Id.*

## II

Defendant Frerichs seeks dismissal of Count I of the Plaintiff's Complaint, arguing, pursuant to Federal Rule of Civil Procedure 12(b)(1), the Eleventh Amendment bars the Plaintiff's Fifth Amendment Takings Clause claim, and, pursuant to Rule 12(b)(6), the Plaintiff fails to allege a viable Takings Clause claim. Federal Rule of Civil Procedure 12(b)(1) provides a complaint may be dismissed for lack of subject-matter jurisdiction, while Federal Rule of Civil Procedure 12(b)(6) provides a complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(1), (6). The Court must first consider Rule 12(b)(1) challenges. *See Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (providing that a court is required to consider subject matter jurisdiction "as the first question in every case[]").

## A

## 1

Here, Defendant Frerichs argues that, plain and simple, the Plaintiff wants the Court to compel the State of Illinois to pay him and members of a putative class money – specifically, the "return" of fees "previously" paid to the State and with interest – but the Eleventh Amendment forecloses such a claim. Frerichs Mem. (D. 42 at ECF p. 5). To the extent Defendant Frerichs makes this argument pursuant to Rule 12(b)(1), the "Seventh Circuit does not consider sovereign immunity to be a jurisdictional bar[]"; the Court therefore considers this argument under Federal Rule of Civil Procedure 12(b)(6). *Cesca v. W. Ill. Univ. Bd. of Trs.*, 716 F. Supp. 3d 696, 709 (C.D. Ill. 2024) (citing *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818,

822 & n.3 (7th Cir. 2016)); *see also McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 533 (7th Cir. 2022) (explaining the Eleventh Amendment "is 'jurisdictional' in the sense that a defendant invoking its sovereign immunity deprives a federal court of jurisdiction over the claims against that defendant."). In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded allegations as true and draw all favorable inferences for the plaintiff. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).[5]

The Eleventh Amendment provides that "'[t]he Judicial power of the United States shall not be construed to extend' to suits by individuals against states." *McHugh*, 55 F.4th at 532 (citing U.S. CONST. amend. XI). "[A]n unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state[]", thus, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Plaintiff Walker counters that the Complaint alleges an ongoing violation of federal law – the State of Illinois' possession of more than $100 million – and requests prospective relief – entry of declaratory and injunctive relief compelling the return of funds illegally retained and an award of interest on the funds – and so an exception to Eleventh Amendment immunity applies here. The *Ex parte Young* doctrine permits a plaintiff to "proceed in federal court against a state official for the limited purpose of obtaining prospective relief against an ongoing violation of federal law." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 518, 520 (7th Cir. 2021) (citing *Ex parte Young*, 209 U.S. 123 (1908)). A court's "task is to 'conduct a straightforward inquiry into whether [the plaintiffs'] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

---

[5] The outcome here is the same whether Defendant Frerichs' sovereign immunity challenge is considered under Rule 12(b)(1) or Rule 12(b)(6).

prospective.'"  *Id.* at 521 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff Walker argues the Supreme Court in *Edelman* stated that "payment from a state treasury was permissible under the appropriate circumstances holding '[s]uch an ancillary effect on a state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*.'"  Pl.'s Resp. to Frerichs (D. 48 at ECF p. 5) (quoting *Edelman*, 415 U.S. at 668)).  Walker says this case presents the unique circumstances contemplated in *Edelman* such that the "restitution" sought in the Complaint falls within the *Ex parte Young* exception.  *See id.* (D. 48 at ECF p. 5).  However, the Supreme Court in *Edelman* was unconvinced by the term "equitable restitution" as a workaround to an Eleventh Amendment bar.  415 U.S. at 668-69.  The *Edelman* court stated:

> While the Court of Appeals described this retroactive award of monetary relief as a form of 'equitable restitution,' it is in practical effect indistinguishable in many aspects from an award of damages against the State.  It will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action.  It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.

*Id.* at 668.  It did not read *Ex parte Young* "or subsequent holdings of this Court to indicate that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled 'equitable' in nature."  *Id.* at 666.

Try as he may to convince this Court otherwise, the relief the Plaintiff seeks in this case is purely retrospective monetary relief to be paid out of the state treasury.  He seeks a *refund* for himself, as well as those in the putative class, of filing fees paid and later determined by the Illinois Supreme Court to be collected pursuant to an unconstitutional state fee statute.  While the Plaintiff argues he

7

sufficiently alleges in the Complaint an ongoing federally unconstitutional taking without just compensation, he later reveals the true nature of his lawsuit in his Response to Defendant Frerich's Motion to Dismiss. Therein, the Plaintiff argues this case presents a "particularly compelling circumstance where *the entry of an order compelling restitution as contemplated by the decision of the Illinois Supreme Court* is a 'permissible and inevitable consequence of the principle announced in *Ex parte Young*.'" Pl.'s Resp. to Frerichs (D. 48 at ECF p. 5) (quoting *Edelman*) (emphasis added). Inescapably, the Plaintiff seeks a remedy for a past injury. Payment of "restitution" here would not amount to "a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those" who were charged the add-on filing fee. *Edelman*, 415 U.S. at 668. In other words, issuance of an injunction requiring return of the collected add-on filing fees would have more than a mere ancillary effect on the State of Illinois' treasury.

*Ford Motor Company v. Department of Treasury of State of Indiana*, 323 U.S. 459 (1945), supports this finding. There, the petitioner's lawsuit was based upon an Indiana statute which prescribed the procedure for obtaining refund of taxes illegally obtained, and where judgment was obtained in the taxpayer's favor, it was to be satisfied by payment out of any funds in the state treasury. *Id.* at 463 (overruled on other grounds by *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002)). The Supreme Court said that statute "clearly provides for a action against the state . . .". *Id.* Significantly, the Supreme Court explained that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit . . .". *Id.* at 464. Ultimately, courts may not "direct a state to make payments to . . . remedy a past injury to a private party." *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1050-51 (7th Cir. 2013).

8

The Plaintiff's reliance upon two cases from the Ninth Circuit Court of Appeals for the proposition that the relevant funds are considered the property of the plaintiff, is misplaced. *See Taylor v. Westly*, 402 F.3d 924, 931 (9th Cir. 2005) (determining, after considering the language of the pertinent California statutes, that "to the extent that the funds remained in the state's special account, they were being held in trust, rather than being in the state treasury."); *Suever v. Connell*, 439 F.3d 1142, 1147-48 (9th Cir. 2006) (applying *Taylor* to the "highly analogous facts here[]" and finding the class's claims not barred by the Eleventh Amendment where they requested the return of the *class's property*) (emphasis added). Not only are these cases nonbinding out-of-circuit precedent[6], a case from within this circuit rejected the plaintiffs' reliance on those cases, stating, "The caselaw [in the Seventh Circuit] make [sic] no distinction between money in state coffers that is owned by the state versus money owned by the property owner, and the line would be a difficult one to draw." *Siebers v. Barca*, No. 20-cv-1109-jdp, 2022 WL 2438605, at *9 (W.D. Wis. July 5, 2022). The Western District of Wisconsin concluded that the plaintiffs' request for the return of their own property was "'indistinguishable from an award of damages against the state' and is barred by sovereign immunity." *Id.* (quoting *Edelman*, 415 U.S. at 651). The Court is persuaded by and agrees with the authority from within this circuit. *See Rubinas v. Maduros*, 513 F. Supp. 3d 994, 1005 (N.D. Ill. 2021) (stating, where the relevant funds then belonged to the State of California and were not held in trust for the taxpayer, "No federal court has the judicial power to order California to pay [the plaintiff] out of its treasury without violating the Eleventh Amendment"). Moreover, as argued by

---

[6] Notably, the Ninth Circuit later referred to *Taylor*'s Eleventh Amendment "exception[]" as "extremely narrow". *N. E. Med. Servs., Inc. v. Cal. Dep't of Health Care Servs., Health and Hum. Servs. Agency*, 712 F.3d 461, 467 (9th Cir. 2013) (deciding *Suever* and *Taylor* did not control where the plaintiffs did not seek return of their own property seized pursuant to a unique statutory scheme and no provision of state law provided that the "seized" disputed funds were held in trust like the seized property in *Suever* and *Taylor*).

Defendant Frerichs, the Eleventh Amendment's applicability does not hinge on labels such as "damages" versus "restitution".[7]

The interest he additionally seeks, that which he says is to be collected on the funds unlawfully retained by Defendant Frerichs since the fees first began to be collected in 2010 and continuing through and including the present, is quite obviously monetary relief "measured in terms of a monetary loss resulting from a *past* breach of a legal duty [allegedly] on the part of" Defendant State Treasurer Frerichs.  *Edelman*, 415 U.S. at 668 (emphasis added).  Moreover, his citation to *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017) bolsters this conclusion.  The *Kolton* court held that while the plaintiffs were entitled to prospective relief under *Ex parte Young*, they could not "parlay success under *Ex parte Young* into a money judgment [for interest] in federal court . . . And after all, Frerichs did not pocket any earnings on Kolton's money.  Illinois did."  869 F.3d at 536 (explaining lawsuit against Treasurer Frerichs in his official capacity was really one against Illinois).  The Plaintiff's citation to *Goldberg v. Frerichs*, 912 F.3d 1009 (7th Cir. 2019), does not move the needle in his direction.  While *Goldberg* began with the *Kolton* court's conclusion that "people whose property is taken into custody by Illinois under the state's Disposition of Unclaimed Property Act . . . are entitled to receive the time value of their property (that is, interest or other earnings), less reasonable custodial fees[,]" *Goldberg* did not say interest is "prospective" relief, nor did *Goldberg* even discuss the Eleventh Amendment.  *Goldberg*, 912 F.3d at 1010.  Finally, *Gerlach v. Rokita*, 95 F.4th 493 (7th Cir. 2024), supports this Court's finding that the Plaintiff's claim against Frerichs is barred by the Eleventh Amendment.  In *Gerlach*, the

---

[7] The Plaintiff refers to the "Lee-Malone doctrine."  Pl.'s Resp. to Frerichs (D. 48 at ECF p. 6).  He does nothing more than cite those two cases.  Such an underdeveloped argument is waived; it is not for the Court to review the cases in the first instance in order to figure out the Plaintiff's reliance on them.  *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments . . . are waived").

10

Seventh Circuit explained that any compensation the plaintiff sought correlated "directly to the interest her property earned while in state custody – interest that flowed to the state, not individual state employees . . . Because the State of Indiana benefited from retaining interest earned on Gerlach's property, we conclude that Gerlach's suit for compensatory relief is actually against the State of Indiana." *Id.* at 501. The *Gerlach* court concluded, "Since Gerlach's claim for compensatory relief is against the state, her claim is doubly barred—first because § 1983 does not create a cause of action against a state and second because Indiana enjoys sovereign immunity under the Eleventh Amendment." *Id.*

It bears mention, as Defendant Frerichs argues, that the Eleventh Amendment's application in this case to bar the Plaintiff's Count I for declaratory and injunctive relief for violation of the Takings Clause of the Fifth and Fourteenth Amendments is particularly clear in this case. Recently, the Seventh Circuit stated, "We ourselves have never held that the unavailability of a state court remedy opens the doors of the federal courthouse to not just prospective relief under *Ex parte Young* but also retrospective relief and payment of money compensation." *Gerlach*, 95 F.4th at 499 n.3. The Court need not delve too deep into the availability/unavailability of Illinois state courts for Takings Clause compensation claims. "Illinois circuit courts have authority to hear true takings claims, which if proven, result in a writ of mandamus ordering the government to institute eminent domain proceedings . . . The Illinois Court of Claims has exclusive jurisdiction over suits asserting damages to property." *Sorrentino v. Godinez*, 777 F.3d 410, 413 (7th Cir. 2015) (internal citation omitted). Furthermore, the Illinois Supreme Court has already held that the plaintiffs' (there and here) claims for a monetary award to redress a past wrong fall within the province of the Illinois Court of Claims. The Plaintiff's Count I is dismissed pursuant to Rule 12(b)(6).

11

**2**

In light of the foregoing, it is unnecessary for the Court to address Defendant Frerichs's and Plaintiff Walker's remaining arguments as to whether Walker has alleged a viable Takings Clause claim against Frerichs.  The relief the Plaintiff seeks for a Takings Clause violation is made unavailable by application of the Eleventh Amendment.  *See Gerlach*, 95 F.4th at 498 (stating "even if the [Supreme] Court does find a direct cause of action [under the Fifth Amendment], the second obstacle – Eleventh Amendment sovereign immunity – disposes of [the plaintiff's] claim."); *see also Texas v. Devillier*, 601 U.S. 285, 292 (2024) (not resolving the question of whether a plaintiff has a cause of action arising directly under the Takings Clause).[8]

**B**

**1**

The County Treasurer Defendants argue that the claim against them must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.  In considering a Rule 12(b)(1) motion to dismiss, the court accepts the well-pleaded facts as true and draws all reasonable inferences in the non-moving party's favor.  *Choice v. Kohn Law Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). Specifically, the County Treasurer Defendants each argue that standing is missing. "Article III standing is a 'bedrock constitutional requirement," and [a federal court] cannot reach the merits of a case without it."  *Wis. Voter All. v. Millis*, 166 F.4th 627, 632 (7th Cir. 2026) (quoting *Food and Drug Admin. v. All. for Hippocratic*

---

[8] The Court also does not address any would-be Takings Clause claim based upon the State Lawsuit Immunity Act which Defendant Frerichs stated he addressed "out of an abundance of caution" because the Plaintiff's Complaint was not entirely clear.  Frerichs Reply (D. 54 at ECF p. 11).  The Plaintiff stated in his Response to Frerichs's Motion to Dismiss, "Defendant [Frerichs] insists . . . the proceedings before the Court of Claims 'do not state a Takings Clause claim.'  [ ]  Even assuming Plaintiffs had actually made such an argument in their Complaint (which they did not) . . .".  Pl.'s Resp. to Frerichs (D. 48 at ECF p. 11) (quoting Frerichs Mem. (D. 42 at ECF p. 13)).

*Med.*, 602 U.S. 367, 378 (2024)). To establish that he has a "personal stake", standing, in a case, a plaintiff must show: 1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; 2) that the injury was likely caused by the defendant; and 3) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The County Treasurer Defendants argue the second element is missing where the injury Plaintiff Walker sustained – the collection of unconstitutional filing fees – is traceable to the circuit court clerks' conduct rather than their own.

The *Lujan* court phrased the second element as follows: "[T]here must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation marks omitted). The Plaintiff's Complaint alleges how the 2% of collected fees were retained by the circuit court clerks of each of Illinois' 102 counties, the Defendants continue to retain for public use private property belonging to the Plaintiff and others similarly situated without just compensation, the County Treasurer Defendants are the custodians of certain private property of the Plaintiffs vested with the control and disposition of such property, and all the party Defendants in their capacity as Treasurers of each county collected court filing fees from the Plaintiff and putative class under state legislation later declared unconstitutional as it was in derogation of their right of free access to the Illinois judicial system. Pl.'s Compl. (D. 1).

It first bears mentioning that, whereas the Plaintiff's earlier Illinois lawsuit named only the Illinois *circuit court clerks* as defendants, the Plaintiff obtained Illinois court certification of a class of defendants that consisted only of all the *circuit court clerks* in Illinois in their official capacities, and the Illinois Supreme

Court explained the Plaintiff's refund request was an award the Illinois Court of Claims may award, the Plaintiff now names the Illinois county *treasurers* as defendants. *See Parungao v Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) ("Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned."); *see also 188 LLC v. Trinity Indus., Inc.*, 300 F/3d730, 735 (7th Cir. 2002) ("It is also well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.") (quotation marks omitted).

Section 5/15-1504.1 of Chapter 735 of the Illinois Compiled Statutes, the Illinois statute pursuant to which filing fees were collected, later declared to be unconstitutional, and which the Plaintiff cites in his Complaint, states, in relevant part:

> With respect to residential real estate, at the time of the filing of a foreclosure complaint, the plaintiff *shall pay to the clerk of the court in which the foreclosure complaint is filed* a fee of $50 for deposit into the Foreclosure Prevention Program Fund, a special fund created in the State treasury. The clerk shall remit the fee collected pursuant to this subsection (a) to the State Treasurer to be expended for the purposes set forth in Section 7.30 of the Illinois Housing Development Act. All fees paid by plaintiffs to the clerk of the court as provided in this subsection (a) shall be disbursed within 60 days *after receipt by the clerk of the court* as follows: (i) 98% to the State Treasurer for deposit into the Foreclosure Prevention Program Fund, and (ii) 2% to the clerk of the court to be retained by the clerk for deposit into the Circuit Court Clerk Operation and Administrative Fund to defray administrative expenses related to implementation of this subsection (a).

735 ILL. COMP. STAT. 5/15-1504.1(a) (emphasis added). The plain language of that provision indicates that the clerk of the court was to collect the filing fee, not the county treasurer. The plain language indicates the clerk of court, not the county

14

treasurer, was to retain 2% of the $50 filing fee. The other 98% was to be placed by the clerk of the court to the State Treasurer, not to the county treasurers. The Circuit Court Clerk Operation and Administrative Fund, in turn, is created by each circuit court clerk, and the circuit court clerk "shall be the custodian, ex officio, of this Fund and shall use the Fund to perform the duties required by the office." 705 ILL. COMP. STAT. 105/27.3d. Nowhere in Section 15-1504.1(a) are the county treasurers expressly mentioned, and nowhere therein are they even implicated.

Missing here is a causal connection between the Plaintiff's alleged injury of the collection of an unconstitutional $50 filing fee and the County Treasurer Defendants' conduct. While the Plaintiff alleges the County Treasurer Defendants are each the "custodians" of the Plaintiff's private property and "collected court filings fees from Plaintiffs under state legislation", Section 15-1504.1(a) totally contradicts those allegations. The Plaintiff argues the public record shows that the Circuit Court Operation and Administrative Fund remains part of the current budget of Illinois counties and continues to be funded out of general funds, and, further, the fund does not appear to be subject to the exclusive control of the circuit clerks as opposed to the control of the county treasurers. He cites (and says it is attached to his Response though it is not) to a section of the Will County Code stating the Will County Treasurer "shall maintain" special funds including the Circuit Court Operations and Administration Fund. Pl.'s Combined Resp. (D. 47 at ECF pp. 5-6). He also directs the Court's attention to a portion of the 2024-25 Cook County Budget Summary, also not attached, which he says places the Circuit Court Operations and Administration Fund within the general funds of Cook County. *Id.* at ECF p. 6. Ultimately, he argues how and by whom the funds are currently being held does not alter the fact that under Illinois law as stated in *Kaden v. Pucinski*, 678 N.E.2d 792 (Ill. App. Ct. 1997), the funds are the property of the counties and subject to the control and disposition of the chief

15

financial officer of that body, the county treasurer. *See Kaden*, 678 N.E.2d at 551 (involving action against clerk of the Cook County circuit court to recover *for the State of Illinois' treasury* circuit court fees that were imposed by the state upon persons using the state court system and that were deposited in county treasuries, and the court concluding under the particular facts and existing authority, the circuit court fees were fees leveled for county usage and could not be characterized as purely trust funds or state funds).

The Plaintiff's arguments fail. Where standing is challenged as a factual matter, as it is here, a plaintiff must come forward with "competent proof" that standing exists. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003). The Plaintiff relies on portions of the Will County Code and the 2024-25 Cook County Budget Summary he did not actually attach for the Court's review. Even if the Court were to accept those documents say what the Plaintiff represents, the fact remains that the relevant Illinois statute cited within the Complaint contradicts the Plaintiff's claim that the county treasurers collected the filing fees and are the fees' custodians. As the County Treasurer Defendants put it, Plaintiff Walker overreads *Kaden*, specifically in the context of this case. *Kaden* case does not help him as his cited (now unconstitutional) Illinois statute in turn refers to another Illinois statute which explicitly states the Circuit Court Clerk Operation and Administrative Fund's custodian is the circuit court clerk. In other words, as the County Treasurer Defendants reply, they are not authorized to collect, retain, or distribute money from the Circuit Clerk Fund. While the Plaintiff alleges in his Complaint that Will County Circuit Court ordered in September 2021 that the filing fees collected under the unconstitutional legislation be held and not transferred to the Illinois State Treasurer, the Will County Circuit Court directed the "circuit clerks" to continue holding the filing fees at issue and made no mention of the county treasurers. *See* Pappas Mem. Ex. A (D. 40-1 at ECF p. 3) ("To the extent the fees

already collected under the subject statutes are (or have been) held by the circuit clerks, *the circuit clerks* are ordered to continue holding said funds, in a segregated account, until further court order." (emphasis added)).

The Plaintiff further argues the Defendants must concede the basis for their Motions to Dismiss do not take the allegations of the Complaint as true, and they cite to statutory language which they believe supports their "admittedly affirmative defense." Pl.'s Combined Resp. (D. 47 at ECF p. 6). Several courts in this circuit have found that lack of standing is not an affirmative defense under federal law. More importantly, and again, if a factual attack is launched against jurisdiction, a plaintiff must come forth with competent proof. *See Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) ("The law is clear that when considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.") (internal citation omitted). The Plaintiff's Count II is dismissed for lack of jurisdiction.

## 2

Given the foregoing, it is unnecessary for the Court to address the County Treasurer Defendants' and Plaintiff Walker's remaining arguments as to res judicata and collateral estoppel[9], failure to state a Takings Clause claim, and *Pullman* abstention. While unnecessary to address, the Court notes that even if it found standing satisfied here *and* all of the Defendant County Treasurer

---

[9] In addition to the switch from naming circuit court clerks in the earlier state court proceedings as defendants to naming county treasurers in the current federal proceedings, the Peoria County Treasurer was specifically named as a defendant here along with the Cook County and Will County Treasurers (the same two counties specifically identified in the earlier state court proceedings). Though technically not improper for the Plaintiff to have done so, it is curious as to why he chose to specifically name the Peoria County Treasurer out of all the other possible Illinois county treasurers that could have been specifically named.

Defendants' challenges failed, their statute of limitations challenge presents another reason to dismiss the Plaintiff's Complaint.    "[W]hen a plaintiff's complaint [ ] sets out all of the elements of an affirmative defense [such as the statute of limitations], dismissal under Rule 12(b)(6) is appropriate." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).  A two-year statute of limitations applies in Section 1983 cases premised on injuries occurring in Illinois. *Woods v. Ill. Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 766 (7th Cir. 2013). See

The allegations of Plaintiff Walker's Complaint include that in 2020, an Illinois circuit court found the legislation providing for the collection of the $50 filing fee to be facially unconstitutional, and in 2021, the Illinois Supreme Court affirmed that ruling and held the legislation to be facially unconstitutional in derogation of the Free Access Clause of the Illinois Constitution.  The Plaintiff filed the instant federal Complaint on September 11, 2025.  In *Knick v. Township of Scott, Pennsylvania*, the Supreme Court stated, "the act of taking is the event which gives rise to the claim for compensation."  588 U.S. 180, 190 (2019).  Further, "The Fifth Amendment right to full compensation arises at the time of the taking . . .".  *Id.*  Applying *Knick* to the alleged facts here, the Plaintiff's Takings Clause claim under Section 1983 against the County Treasurer Defendants arose, at the latest, in 2021 when the Illinois Supreme Court held the filing fee legislation unconstitutional. *See Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 930 (7th Cir. 2025) (explaining that federal law governs the accrual date for Section 1983 claims, and that date is when the plaintiff "knows or should know that his or her constitutional rights have been violated.") (quoting *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004)). Thus, his Section 1983 claim raised in this Court in September 2025 is late.

Plaintiff Walker's contention that the five-year Illinois statute of limitations for injury or loss to property applies is simply wrong; it is firmly established that

Section 1983 claims brought in federal court based upon injuries occurring in Illinois are subject to Illinois' two-year statute of limitations for personal injury claims. His contention that the deprivation of his federal rights occurred when his Takings Clause claim became ripe on April 8, 2025, the date the State of Illinois filed its Motion to Dismiss in the Court of Claims, is borderline frivolous and certainly incorrect. The Supreme Court and Seventh Circuit authority cited above renders the Plaintiff's argument entirely unpersuasive.

**3**

County Treasurer Defendants Martin, Brophy, and McGartland additionally argue this case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a party under Federal Rule of Civil Procedure 19. "In deciding a Rule 12(b)(7) motion to dismiss, [the court] must apply Rule 19(b) if [it] first determine[s] that the party to be joined satisfies the threshold requirements of Rule 19(a)." *Boulevard Bank Nat'l Ass'n v. Philips Med. Sys. Int'l B.V.*, 15 F.3d 1419, 1422 (7th Cir. 1994). Rule 19(a) provides that a person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if the court cannot accord complete relief among existing parties in that person's absence, or disposing of the action in that person's absence may as a practical matter impair or impede the person's ability to protect the interest or leave an existing party subject to substantial risk of incurring otherwise inconsistent obligations because of the interest. FED. R. CIV. P. 19(a)(1)(A)-(B)(ii). Rule 19(a)(2) provides in relevant part, "If a person has not been joined as required, the court must order that the person be made a party." FED. R. CIV. P. 19(a)(2).

The circuit court clerks of each of the 102 counties in Illinois are subject to service of process and their joinder will not deprive this court of federal question subject matter jurisdiction if joined as parties. They are, pursuant to the

19

unconstitutional fee statute, responsible for the 2% portion of the fee collected and retained and maintain control over the Circuit Clerk Fund. Hence, this Court cannot accord complete relief among the parties in their absence, and their absence would impede their ability to assert any defenses they may have, including the statute of limitations, res judicata, collateral estoppel, and sovereign immunity. The circuit court clerks must be made defendants in this action while the County Treasurer Defendants will be dismissed from this action pursuant to Federal Rule of Civil Procedure 21. *See* FED. R. CIV. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). The Court drops the County Treasurer Defendants for the reasons already stated – standing is missing, and the statute of limitations has run on the Plaintiff's would-be 1983 claim against those Defendants.

**4**

Lastly, Defendants Martin, Brophy, and McGartland all seek attorney's fees pursuant to 42 U.S.C. § 1988. Section 1988 "allows the award of 'a reasonable attorney's fee' to 'the prevailing party' in various kinds of civil rights cases, including suits brought under § 1983." *Fox v. Vice*, 563 U.S. 826, 832-33 (2011) (quoting Section 1988). Those three County Treasurer Defendants cite Supreme Court authority, arguing that a "prevailing party" in a civil rights action "should ordinarily recover an attorney's fee" unless special circumstances would render such an award unjust. Martin Mem. (D. 39 at ECF p. 10); Brophy Mem. (D. 44 at ECF p. 14) (both quoting *Lefemine v. Wideman*, 568 U.S. 1, 5 (2012)). More specifically, with regard to a prevailing defendant, the Supreme Court has said "§ 1988 authorizes a district court to award attorney's fees to a defendant 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Fox*, 563 U.S. at 833 (quoting *Christianburg Garment Co. v. Equal Emp.*

20

*Opportunity Comm'n*, 434 U.S. 412, 421 (1978)).   None of those three County Treasurer Defendants makes a sufficiently developed argument for fees under Section 1988.  Nor does the Court find Plaintiff Walker's action to tip over the line to frivolous, unreasonable, or without foundation.    The County Treasurer Defendants are not entitled to attorney's fees.

### III

For the reasons set forth *supra*, Defendant Branden Martin, Treasurer of Peoria County's Motion to Dismiss (D. 38) is GRANTED, Defendant Cook County Treasurer's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (D. 40) is GRANTED, Defendant Illinois Treasurer Michael Frerichs's Motion to Dismiss (D. 41) is GRANTED, Defendant Will County Treasurer Tim Brophy's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), (6), & (7) (D. 43) is GRANTED, and Defendant Macoupin County Treasurer Amber McGartland's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), (6), & (7) (D. 46) is GRANTED.  Count I of Plaintiff Reuben Walker's Complaint (D. 1) against Defendant Frerichs is DISMISSED WITH PREJUDICE.  Count II of the Plaintiff's Complaint against Defendants Martin, Pappas, Brophy, McGartland and all County Treasurers of the State of Illinois is DISMISSED WITH PREJUDICE.  The Clerk is directed to terminate Defendants Martin, Frerichs, Brophy, Pappas, McGartland and all County Treasurers of the State of Illinois in their official capacities from this case.  The Clerks of the Circuit Courts of all counties within the State of Illinois are ordered to be made party defendants in this case pursuant to Federal Rule of Civil Procedure 19(a)(2).  The Plaintiff is directed to file an amended complaint by April 6, 2026 naming as defendants *only* the Clerks of the Circuit Courts of the counties within the State of Illinois in their official capacities. The Plaintiff must properly serve the newly added Clerks of the Circuit Courts of the State of Illinois within 30 days of the date of this Order. Should the Plaintiff

fail to file an amended complaint on or before April 6, 2026, final judgment will enter and the case will be terminated.

This matter is referred to the Magistrate Judge for further proceedings.

*It is so ordered.*

Entered on March 23, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE